Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| HUMBERTO FÉLIX COBO ESTRELLA<br><br>Apelante<br><br>v.<br><br>RUBÉN SÁNCHEZ, ET AL.<br><br>Apelados | KLAN202500502 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso número: SJ2024CV08696<br><br>Sobre:<br>Daños y Perjuicios |

Panel integrado por su presidenta, la jueza Ortiz Flores, la juez Aldebol Mora y la jueza Boria Vizcarrondo.

Aldebol Mora, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 30 de junio de 2025.

Comparece la parte apelante, Humberto F. Cobo Estrella, y nos solicita que revoquemos la *Sentencia Parcial* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 1 de mayo de 2025. Mediante dicho dictamen, el foro primario declaró Ha Lugar la solicitud de desestimación promovida por la parte apelada, Rubén Sánchez. En consecuencia, el foro apelado desestimó con perjuicio la demanda de epígrafe en cuanto a dicha parte.

Por los fundamentos que exponemos a continuación, se confirma el dictamen apelado.

### I

El 19 de septiembre de 2024, Humberto F. Cobo Estrella (Cobo Estrella o apelante) incoó una *Demanda* sobre daños y perjuicios en contra de Rubén Sánchez (Sánchez o apelado), entre otros codemandados.[1] En síntesis, alegó que, durante la entrevista

---

[1] Entrada Núm. 1 del Caso Núm. SJ2024CV08696 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

Número Identificador

SEN2025 _____

que transmitieran en vivo por radio, televisión y formato digital el 17 de septiembre de 2024, Sánchez alteró su paz, con gritos y gestos corporales, luego de que se negara a identificar a una víctima de violencia doméstica. Según adujo, Sánchez insistió que confirmara la identidad de la referida víctima, aun cuando este negó hacerlo. Arguyó que, ante su negativa, Sánchez "arremetió de súbito verbalmente" en su contra, exigiendo que se fuera del estudio durante la entrevista. Ello, mientras, las cámaras captaban cómo Sánchez le gritaba "váyase de mi programa", "váyase ahora" y "te vas de aquí". Planteó que Sánchez, además, le gritó "irrespetuoso" y provocó que un empleado lo agrediera físicamente al agarrarlo y halarlo por el brazo izquierdo con el fin de sacarlo de la cabina de grabación. Indicó que lo anterior ocurrió mientras las cámaras captaban lo sucedido. Sostuvo que alteraron su paz y lo agredieron físicamente durante la referida entrevista, humillándolo públicamente mientras se mantenía en un estado de incredulidad por lo que ocurría. Argumentó que, a raíz de lo anterior, varios medios noticiosos reportaron lo sucedido, con titulares humillantes e imágenes y video de lo ocurrido, lo cual afectó su imagen y reputación. Alegó que Sánchez lesionó su honra y dignidad como ser humano al ser ridiculizado. Arguyó que el tener que responderle a otros medios de comunicación para reivindicar su reputación afectó su estado emocional y le ocasionó angustias mentales. En virtud de ello, solicitó el pago de $2,000,000.00 por concepto de sufrimientos, angustias mentales, agresión física y daños a su reputación profesional, más los gastos, costas y honorarios de abogados(as).

Posteriormente, el 16 de octubre de 2024, Cobo Estrella enmendó su demanda con la autorización del tribunal de instancia.[2] En específico, Cobo Estrella esbozó las siguientes alegaciones:

---

[2] Entradas Núm. 21 y 23 del Caso Núm. SJ2024CV08696 en el SUMAC.

1. El Lcdo. Humberto Cobo Estrella, es un destacado abogado, cuya trayectoria en la práctica legal se extiende a sobre quince (15) años postulando ante los foros estatales y federales en Puerto Rico. El Lcdo. Cobo Estrella actualmente es un aspirante debidamente certificado por la CEE para ocupar el puesto de alcalde del Municipio de Carolina.

2. Como parte de la campaña electoral en curso, el Lcdo. Cobo Estrella fue invitado por el codemandado, Rubén Sánchez, para que se presentara en su programa, "Temprano en la Mañana", el día 17 de septiembre de 2024, bajo la representación engañosa de que iba a ser entrevistado con relación a sus propuestas, planes de trabajo y otros asuntos relacionados a su candidatura por

3. Confiando en tales representaciones, el Lcdo. Cobo Estrella aceptó dicha invitación y se presentó a dicho programa, el cual se transmite en vivo por radio, TV, y en formato digital a través de las redes sociales de WKAQ y WAPA, entre otras, para ser entrevistado por Rubén Sánchez sobre su candidatura a la alcaldía de Carolina, según se le había representado.

4. Al comenzar la entrevista en cuestión, el Lcdo. Cobo Estrella intentó hablar sobre los problemas que afectan al Municipio de Carolina, las situaciones que le motivaron a aspirar a la alcaldía, y los planes y propuestas concretas en las que se basa su plataforma de campaña.

5. No obstante, contrario se le había representado al Lcdo. Cobo Estrella, ninguno de estos asuntos era del interés de Rubén Sánchez, quien no permitió al Lcdo. Cobo Estrella expresarse sobre asuntos relacionados al Municipio de Carolina, pues insistía en que el demandante hablara únicamente de una fémina que alegaba haber sido víctima de violencia doméstica, prohibiendo así que este se expresara sobre asuntos de interés público en crasa violación al derecho de libertad de expresión que le cobija, así como al derecho que tienen los ciudadanos a recibir dicha información.

6. Lo que suponía ser una entrevista sobre asuntos de interés público para el Municipio de Carolina, y un foro para el debate e intercambio de ideas para beneficio de los electores de dicho Municipio, resultó ser una falsa mediática orquestada por Rubén Sánchez quien, en un triste intento por mejorar los números ("ratings") de su programa, recurrió a artimañas engañosas contra una persona de ley y orden, para intentar inducirle a revelar la identidad de una fémina que atraviesa un procedimiento confidencial al amparo de la Ley Para la Prevención e Intervención con la Violencia Doméstica.

7. Tales acciones, además de demostrar claramente la agenda e intención maliciosa de Rubén Sánchez para con el demandado, así como de coartar su derecho a la libertad de expresión, constituyeron una crasa censura al material de contenido político que el Lcdo. Cobo Estrella intentaba comunicar a través de dicho medio de difusión masiva, así como de privarle a este la oportunidad de expresarse

cabalmente sobre un ataque personal que se hizo directo a su honra, imagen y dignidad.

8. En su insistencia por abordar dicho asunto con el Lcdo. Cobo Estrella, Rubén Sánchez procedió a tergiversar ciertos hechos relacionados a una orden de protección exparte expedida a favor de dicha fémina, afirmando que al Lcdo. Cobo Estrella le habían confiscado unas armas, y que este había obligado a la fémina a tener relaciones sexuales bajo amenaza de muerte y a punto de pistola, lo cual es totalmente falso y falla maliciosamente con malicia real a la veracidad de lo contenido en dicha orden.

9. Más aun, cuando el Lcdo. Cobo Estrella procedió a aclarar que no se le habían confiscado armas y que era falso que haya obligado a la fémina a sostener relaciones sexuales a punta de pistola, Rubén Sánchez le impidió seguir explicando su postura y le ripostó diciendo "pero eso es lo que está planteado".

10. Luego de tales afirmaciones por parte de Rubén Sánchez, el Lcdo. Cobo Estrella procedió a dejar claro que lo planteado por Rubén Sánchez era totalmente falso, toda vez que eso no era lo que constaba en dicha orden, y que, además, todavía no se había celebrado vista judicial alguna mediante la cual se hayan probado tales alegaciones.

11. Estas expresiones de Rubén Sánchez se hicieron a sabiendas de que eran falsas y fueron realizadas con malicia real, con la única intención de añadir morbo a su programa y de mancillar la dignidad, imagen y reputación del Lcdo. Cobo Estrella de cara a las próximas elecciones, creando una versión crasamente falsa y tergiversada de los hechos reales.

12. Acto seguido, Rubén Sánchez procedió a insistir en que el Lcdo. Cobo Estrella revelara al aire la identidad de la alegada víctima de violencia doméstica, presionándole para que divulgara públicamente su nombre (lo que está expresamente prohibido en procedimientos legales de violencia doméstica), y como si fuera poco, mostrándole una foto de dicha fémina desde su teléfono móvil con la intención de que este confirmara, en un medio de difusión masivo (que se ve tanto en Puerto Rico, como en el exterior), que esa era la persona que levantaba dichas alegaciones.

13. A pesar de la insistencia de Rubén Sánchez en que el demandante confirmara la identidad de la fémina, éste nunca accedió por entender que lo que solicitaba el demandado era ilegal, antiético, e inmoral, y violentaba así el derecho a la confidencialidad de su identidad (específicamente su imagen, nombre y apellido) en un trámite legal.

14. Luego de que el Lcdo. Cobo Estrella se negara rotundamente a realizar cualquier tipo de identificación de la alegada víctima, y por tanto, frustrara así el malicioso plan de Rubén Sánchez de que se revelase a la luz pública la identidad de dicha fémina en su programa, este estalló en cólera y arremetiendo de súbito verbalmente contra el demandante, exigiendo que se fuera del estudio durante la entrevista. Mientras esto ocurría, las cámaras captaban como el demandado Rubén

Sánchez le gritaba "váyase de mi programa", "váyase ahora" y "te vas de aquí" gritándole además que era "irrespetuoso" e incitando a que el codemandado, Rafael Gabriel "Golo" Cruz, quien labora para WKAQ en dicho programa, interviniera para remover por la fuerza al demandante.

15. Mientras el codemandado Rubén Sánchez le agredía verbalmente de forma exagerada, desmesurada y desesperada frente a las cámaras, el Lcdo. Cobo Estrella mantuvo su temple, y actuando en todo momento como una persona prudente y razonable, procedía a recoger sus cosas para marcharse del programa, sin tan siquiera devolver los insultos que le fueron conferidos ni negarse a abandonar el estudio donde se grababa el programa.

16. No obstante lo anterior, mientras el Lcdo. Cobo Estrella recogía sus pertenencias para marcharse, el codemandado, Rafael Gabriel "Golo" Cruz, sin provocación ni necesidad alguna para el uso de fuerza, irrumpió repentinamente al estudio de grabación y procedió a agarrar y halar por el brazo izquierdo de manera agresiva y violenta al Lcdo. Cobo Estrella para sacarlo a la fuerza del lugar, todo mientras la cámaras y audio, captaban el estado de cólera con el que el demandado Rubén Sánchez arremetía verbalmente y con gestos, humillando públicamente, al demandante, mientras este era agredido físicamente por el Sr. Cruz.

17. Mientras el Lcdo. Cobo Estrella era sacado a la fuerza del estudio de grabación por el Sr. Cruz, el codemandado Rubén Sánchez continuó agrediéndolo verbalmente y continuó además haciendo declaraciones difamatorias en su contra, tales como "yo no soy el que tiene una orden de protección… eres tú", "y el de las armas eres tú", insinuando nuevamente que el Lcdo. Cobo Estrella había obligado a la fémina a sostener relaciones sexuales mediante amenaza con armas de fuego, tal y como le había imputado anteriormente en la entrevista.

18. Estos actos de parte de Rubén Sánchez fueron totalmente infundados, desproporcionados y fueron realizados como parte de un plan concertado de este para mancillar y hacerle daño a la reputación e imagen del Lcdo. Cobo Estrella mediante un espectáculo mediático que, a su vez, le diera más "ratings" a su programa.

19. Durante dicha entrevista el demandado, Rubén Sánchez y el Sr. "Golo" Cruz alteraron la paz del demandante, y lo agredieron físicamente, humillándolo públicamente, mientras, el demandante se mantenía en estado de incredulidad de lo que ocurría.

20. A consecuencia de la publicación de dicha entrevista, los titulares de varios medios noticioso[s] reportaron lo sucedido, con titulares humillantes e imágenes, incluso video (online) de lo ocurrido. Los hechos antes descritos, que incluyen la alteración a la paz y agresión física del demandante, con la transmisión de lo ocurrido de forma pública, afectaron la imagen y reputación del demandante.

Además, lesionando su honra y dignidad como ser humano, siendo ridiculizado. Afectando su estado emocional, ocasionando angustias mentales y que este tuviese que responderles a otros medios de comunicación, para revindicar su reputación.

Luego de varios trámites procesales, el 18 de noviembre de 2024, Sánchez instó una *Solicitud de Desestimación a Demanda Enmendada,* al amparo de la Regla 10.2(5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2(5).[3] En síntesis, alegó que las reclamaciones esbozadas por Cobo Estrella carecían de fundamento jurídico y fáctico. Según adujo, las causas de acción por alteración a la paz, agresión física, daños a la reputación, angustias mentales y violación de la disposición federal 47 USC sec. 315 no cumplieron con los requisitos legales necesarios para prosperar. Arguyó que la reclamación por alteración a la paz no podía proceder, ya que Cobo Estrella participaba en una entrevista pública, donde no existía una expectativa razonable de tranquilidad o intimidad. Argumentó que las preguntas realizadas durante la referida entrevista no constituían provocaciones o insultos que pudieran haber generado una reacción violenta o airada, conforme a la jurisprudencia aplicable.

Por otro lado, Sánchez planteó en su petitorio que la reclamación por agresión física también carecía de mérito, ya que Cobo Estrella no había presentado ninguna alegación que lo vinculara directamente con dicho acto. Sobre ese particular, indicó que de la demanda surgía que la presunta agresión fue cometida por otra persona y no había alegación de que este tuviera control o supervisión sobre esa persona. En cuanto a los daños a la reputación, planteó que se trataba esencialmente de una reclamación de difamación y Cobo Estrella no hizo alegación alguna sobre declaración falsa realizada por este. Señaló que las preguntas

---

[3] Entrada Núm. 38 del Caso Núm. SJ2024CV08696 en el SUMAC.

formuladas durante la entrevista estaban protegidas por el derecho a la libertad de expresión. Añadió que la afirmación sobre las armas y la orden de protección eran ciertas y admitidas por Cobo Estrella en otro pleito. De otro lado, alegó que la reclamación por angustias mentales debía ser desestimada porque era contingente y dependía de las demás causas de acción, las cuales carecían de fundamento. Por último, argumentó que las alegaciones sobre la disposición federal 47 USC sec. 315, conocida como la provisión de *equal time*, era manifiestamente frívola porque el foro con jurisdicción exclusiva para resolver disputas bajo esta disposición era la FCC y que no existía una causa de acción privada para reclamar daños en los tribunales bajo dicha legislación. En vista de lo anterior, solicitó que se desestimara la acción de epígrafe y se impusiera honorarios por temeridad.

El 16 de enero de 2025, Cobo Estrella se opuso.[4] En esencia, argumentó que las alegaciones y los hechos que se recogían en la demanda era fácilmente corroborables de la grabación del programa radial en la que Sánchez había incurrido en alternación a la paz, agresión y difamación en su contra. Arguyó que dichas alegaciones satisfacían las disposiciones del ordenamiento jurídico en cuanto a la naturaleza y alcance de las alegaciones de una demanda. Sostuvo que tales alegaciones permitían colegir que, en efecto, tenía derecho a cada uno de los reclamos que se recogían en la acción de epígrafe. De igual forma, planteó que había esbozado sus defensas en la demanda mediante una relación sucinta, sencilla y directa, tomando en consideración que, conforme a nuestro ordenamiento jurídico, todas las alegaciones deberían interpretarse con el propósito de hacer justicia. Especificó que había cumplido, además, con las exigencias de los casos federales *Bell Atlantic Corp. v. Twombly*, 550

---

[4] Entrada Núm. 58 del Caso Núm. SJ2024CV08696 en el SUMAC.

US 544 (2007), y *Ashcroft v. Iqbal*, 556 US 662 (2009). Reiteró que las alegaciones correctas en derecho detalladas en la demanda permitían que fuera resarcido completamente en daños y perjuicios. En vista de ello, sostuvo que la solicitud de desestimación carecía de méritos y debía declararse No Ha Lugar.

Evaluadas las posturas de las partes, el 1 de mayo de 2025, el Tribunal de Primera Instancia emitió y notificó la *Sentencia Parcial* que nos ocupa, mediante la cual declaró Ha Lugar la solicitud de desestimación promovida por Sánchez. En particular, concluyó que, al aplicar todos los principios de derecho correspondientes y tomando por ciertas las alegaciones de hechos bien formuladas, Cobo Estrella no tenía una causa de acción que justificara la concesión de un remedio contra Sánchez. Expresó que, independientemente de la existencia de buen gusto o no en la forma en que se llevó a cabo el trabajo de Sánchez, no existían alegaciones de hechos y de malicia real concretos. Señaló, además, que las alegaciones tampoco constituyeron conducta que se pudiera interpretar delictiva de alteración a la paz o agresión física para dar lugar a una causa de acción en daños y perjuicios.

Inconforme, el 2 de junio de 2025, la parte apelante acudió ante esta Curia mediante el recurso de epígrafe y señaló los siguientes errores:

> Erró el Tribunal de Primera Instancia al desestimar en una etapa inicial la demanda por falta de *alegación* de *malicia real,* ya que la Sentencia contradice la jurisprudencia del Honorable Tribunal Supremo de Puerto Rico y el Tribunal Supremo de los Estados Unidos, que establece que la malicia real es un *asunto* de prueba y no de alegación espec[í]fica en esta etapa inicial del caso.

> Erró el Tribunal de Primera Instancia al rechazar prematuramente la reclamación de *difamación,* sin evaluar cuidadosamente con *un balance constitucional* todos los derechos constitucionales envueltos, la determinación del TPI contradice la doctrina vigente. De modo que erró el TPI al no realizar un balance adecuado entre la libertad de expresión y derecho a la honra y reputación.

Erró el Tribunal de Primera Instancia al desestimar la *reclamación de responsabilidad vicaria, sin permitir el descubrimiento de prueba*, esto contradice la jurisprudencia del Tribunal Supremo de Puerto Rico.

En cumplimiento con nuestra *Resolución* del 4 de junio de 2025, la parte apelada compareció mediante *Oposición a Apelación* el 18 de junio del año corriente.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

**A**

Sabido es que el propósito de las alegaciones es notificarle de forma general a la parte demandada cuáles son las reclamaciones en su contra para que pueda comparecer a defenderse si así lo desea. *Eagle Security v. Efrón Dorado et al.*, 211 DPR 70 (2023). A tenor con ello, al analizar una solicitud de desestimación, los tribunales deben tener presente que la Regla 6.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 6.1, solo exige que las alegaciones contengan una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio. *Rivera Candela y otra v. Universal Insurance Company*, 2024 TSPR 99, resuelto el 11 de septiembre de 2024; *Eagle Security v. Efrón Dorado et al.*, supra.

Ahora bien, en el ámbito federal, el Tribunal Supremo de los Estados Unidos tuvo ocasión de interpretar la contraparte federal de nuestra Regla 6.1, la Regla 8(a) de Procedimiento Civil Federal, al resolver *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), y *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Por medio de los citados casos, el Alto Foro federal incorporó la plausibilidad como criterio de desestimación. Dicho parámetro exhorta a los tribunales de instancia a eliminar de la demanda aquellas alegaciones conclusorias que no deben presumirse como ciertas. R. Hernández

Colón, *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil,* 6ta ed., Ed. Lexis Nexis, 2017, sec. 2604, pág. 307. De esta manera, el foro sentenciador estará en posición de auscultar si las alegaciones bien fundamentadas establecen una reclamación plausible, "que justifique que el demandante tiene derecho a un remedio, guiado en su análisis por la experiencia y el sentido común". *Íd.* Incumplido el criterio de plausibilidad, procede desestimar la demanda e impedir que la causa de acción prosiga bajo el supuesto de que en el descubrimiento de prueba se probarán las alegaciones conclusorias. *Íd.* Ello "persigue una mayor precisión en los hechos bien alegados para lograr una mejor definición de la controversia trabada en las alegaciones".

**B**

Nuestro ordenamiento jurídico promueve el interés de que todo litigante tenga su día en corte. Esta postura responde al principio fundamental y política judicial de que los casos se ventilen en sus méritos y se resuelvan de forma justa, rápida y económica. Regla 1 de Procedimiento Civil, 32 LPRA Ap. V, R. 1; *Banco Popular v. S.LG. Negrón,* 164 DPR 855, 874 (2005); *Rivera et al. v. Superior Pkg., Inc. et al.,* 132 DPR 115, 124 (1992); *Amaro González v. First Fed. Savs.,* 132 DPR 1042, 1052 (1993). No obstante, nuestro ordenamiento permite la presentación de mociones dispositivas con el propósito de que todos o algunos de los asuntos en controversia sean resueltos sin necesidad de un juicio en su fondo. Los tribunales tienen el poder discrecional, bajo las Reglas de Procedimiento Civil, de desestimar una demanda o eliminar las alegaciones de una parte, sin embargo, ese proceder se debe ejercer juiciosa y apropiadamente. *Maldonado v. Srio. de Rec. Naturales,* 113 DPR 494, 498 (1982). Es decir, la desestimación de un pleito constituye el último recurso al cual se debe acudir. *S.L.G. Sierra v. Rodríguez,* 163 DPR 738 (2005).

La moción de desestimación bajo la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, es aquella que formula la parte demandada antes de presentar su alegación responsiva, mediante la cual solicita que se desestime la demanda presentada en su contra. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008); *Colón v. Lotería*, 167 DPR 625, 649 (2006). Dicho petitorio deberá basarse en uno de los siguientes fundamentos: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; y (6) dejar de acumular una parte indispensable. 32 LPRA Ap. V, R. 10.2; *Díaz Vázquez y otros v. Colón Peña y otros*, 2024 TSPR 113, resuelto el 25 de octubre de 2024; *Inmobiliaria Baleares, LLC y otros v. Benabe González y otros*, 2024 TSPR 112, resuelto el 21 de octubre de 2024; *Rivera Candela y otra v. Universal Insurance Company*, 2024 TSPR 99, resuelto el 11 de septiembre de 2024; *Blassino Alvarado y otro v. Reyes Blassino y otro*, 2024 TSPR 93, resuelto el 20 de agosto de 2024; *Costas Elena y otros v. Magic Sport y otros*, 213 DPR 523 (2024); *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384 (2022); *Conde Cruz v. Resto Rodríguez et al.*, 205 DPR 1043, 1065-1066 (2020).

Al resolver una moción de desestimación bajo el inciso 5 de la Regla 10.2 de Procedimiento Civil, *supra*, el tribunal tomará como ciertos todos los hechos bien alegados en la demanda, que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro*, 2025 TSPR 1, resuelto el 7 de enero de 2025; *Díaz Vázquez y otros v. Colón Peña y otros*, supra; *Inmobiliaria Baleares, LLC y otros v. Benabe González y otros*, supra; *Rivera Candela y otra v. Universal Insurance Company*, supra; *Blassino*

*Alvarado y otro v. Reyes Blassino y otro*, supra; *Costas Elena y otros v. Magic Sport y otros*, supra; *Eagle Security v. Efrón Dorado et al.*, 211 DPR 70 (2023); *Casillas Carrasquillo v. ELA*, 209 DPR 240 (2022); *Cruz Pérez v. Roldán Rodríguez et al.*, 206 DPR 261, 267 (2021). Asimismo, tales alegaciones hay que interpretarlas conjuntamente, liberalmente, y de la manera más favorable posible para la parte demandante. *Íd.*; *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, supra, págs. 428-429; *Dorante v. Wrangler of P.R.*, 145 DPR 408, 414 (1998). En vista de ello, la desestimación procedería únicamente cuando de los hechos alegados no podía concederse remedio alguno a favor de la parte demandante. *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1049 (2013), citando a R. Hernández Colón, *Derecho Procesal Civil*, 4ta ed., San Juan, Ed. Lexis-Nexis, 2007, pág. 231. Tampoco procede la desestimación si la demanda es susceptible de ser enmendada. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, supra, pág. 429. En otras palabras, se debe considerar, "si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida". *Díaz Vázquez y otros v. Colón Peña y otros*, supra; *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 DPR 497 (1994); *Unisys v. Ramallo Brothers*, 128 DPR 842 (1991). Ahora bien, si tras este análisis el tribunal aún entiende que no se cumple con el estándar de plausibilidad, entonces debe desestimar la demanda, pues no puede permitir que proceda una demanda insuficiente bajo el pretexto de que se podrán probar las alegaciones conclusorias con el descubrimiento de prueba. *Costas Elena y otros v. Magic Sport y otros*, supra.

## C

Al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso.

*Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 770 (2013). Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *BPPR v. SLG Gómez-López,* 213 DPR 314 (2023); *Dávila Nieves v. Meléndez Marín,* supra, pág. 771; *Serrano Muñoz v. Auxilio Mutuo,* 171 DPR 717, 741 (2007). De manera que, si la actuación del tribunal no está desprovista de base razonable, ni perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de instancia a quien corresponde la dirección del proceso. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414 (2013); *Sierra v. Tribunal Superior,* 81 DPR 554, 572 (1959).

Sin embargo, la norma de deferencia esbozada encuentra su excepción y cede cuando la parte promovente demuestra que hubo un craso abuso de discreción, prejuicio, error manifiesto o parcialidad. *BPPR v. SLG Gómez-López,* supra; *Trans-Oceanic Life Ins. v. Oracle Corp.,* 184 DPR 689 (2012). Además, se requiere que nuestra intervención en esta etapa evite un perjuicio sustancial. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194 (2023); *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986).

Por *discreción* se entiende el "tener poder para decidir en una forma u otra, esto es, para escoger entre uno o varios cursos de acción". *García v. Asociación,* 165 DPR 311, 321 (2005), citando a *Pueblo v. Ortega Santiago,* 125 DPR 203, 211 (1990). No obstante, "el adecuado ejercicio de la discreción está inexorable e indefectiblemente atado al concepto de la razonabilidad". *Íd.* A esos efectos, el Tribunal Supremo de Puerto Rico ha indicado cuáles son situaciones que constituyen un abuso de discreción, a saber:

> [C]uando el juez, en la decisión que emite, no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando por el contrario el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en el mismo; o cuando, no

obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez livianamente sopesa y calibra los mismos. *Ramírez v. Policía de P.R.*, 158 DPR 320, 340-341 (2002), citando a *Pueblo v. Ortega Santiago*, supra, págs. 211-212. Véase, además, *BPPR v. SLG Gómez-López*, supra.

Así, pues, la discreción no implica que los tribunales puedan actuar de una forma u otra en abstracción del resto del derecho. *Rivera et al. v. Arcos Dorados et al.*, supra. En otras palabras, la discreción no opera en un vacío y tampoco puede ser en "función al antojo o voluntad de uno, sin tasa ni limitación alguna". *BPPR v. SLG Gómez-López*, supra, citando a *SLG Zapata-Rivera v. J.F. Montalvo*, supra.

A la luz de la normativa antes expuesta, procedemos a disponer de la controversia ante nuestra consideración.

**III**

La parte apelante sostiene en su primer señalamiento de error que el Tribunal de Primera Instancia incidió al desestimar la demanda de epígrafe por falta de alegación de malicia real, ya que la *Sentencia* contradice la jurisprudencia del Tribunal Supremo de Puerto Rico y de los Estados Unidos, la cual establece que la malicia real es un asunto de prueba y no de alegación específica en esta etapa inicial del caso. Como segundo señalamiento de error, plantea que el foro primario erró al rechazar prematuramente la reclamación de difamación, sin evaluar cuidadosamente con un balance constitucional todos los derechos constitucionales envueltos. En su tercer y último error señalado, alega que el foro de origen incidió al desestimar la reclamación de responsabilidad vicaria, sin permitir el descubrimiento de prueba, lo cual contradice la jurisprudencia de nuestro más Alto Foro.

Hemos examinado cuidadosamente el trámite procesal, los escritos de las partes, así como la normativa aplicable y concluimos

que el Tribunal de Primera Instancia no incidió al desestimar la causa de acción en contra de la parte apelada. Nos explicamos.

Según reseñáramos, el inciso (5) de la Regla 10.2 de Procedimiento Civil, *supra*, permite que la parte demandada presente una moción de desestimación levantando como defensa que la demanda incoada en su contra deja de exponer una reclamación que justifique la concesión de un remedio. Al resolver este tipo de moción dispositiva bajo dicho fundamento, se tomarán como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente; y que de su faz no den margen a dudas. Dichas alegaciones deben contener una relación sucinta y sencilla de los hechos y la solicitud del remedio. Ello sin perder de vista el criterio de plausibilidad, el cual exhorta a eliminar de la demanda aquellas alegaciones conclusorias que no deben presumirse como ciertas. Asimismo, tales alegaciones se interpretarán conjuntamente, liberalmente y de la forma más favorable posible para la parte demandante. La demanda no deberá desestimarse, a menos que se demuestre que la parte demandante no tiene derecho a remedio alguno, bajo cualesquiera hechos que pueda probar. Tampoco procede la desestimación, si la demanda es susceptible de ser enmendada.

Al evaluar las alegaciones contenidas en la *Demanda Enmendada* de epígrafe en cuanto a la parte apelada, concluimos que estas no superan los criterios establecidos en las Reglas 6.1 y 10.2(5) de Procedimiento Civil, *supra*, según discutidos previamente. La parte apelante se limitó a esbozar conclusiones de derecho y alegaciones que no exponían los presuntos daños sufridos. Luego de entender sobre las alegaciones esbozadas en la acción de epígrafe, colegimos que estas carecen de especificidad que puedan dar base a una posible reclamación que justifique la concesión de un remedio.

Si bien es cierto que el foro primario realizó un análisis en los méritos de las alegaciones expuestas en la acción de epígrafe, apartándose así del análisis adjudicativo que exige la Regla 10.2(5) de Procedimiento Civil, *supra*, y su jurisprudencia interpretativa, al tomar como ciertos todos los hechos bien alegados en la *Demanda Enmendada* y aseverados de manera clara y concluyente, de la forma más favorable para la parte apelante, no puede inferirse que la parte apelada incurriera en conducta que pueda justificar los remedios solicitados, sino que se trata de alegaciones conclusorias y carentes de una alegación concreta de daños. En atención a lo anterior, concluimos que el foro primario no incidió al declarar Ha Lugar la solicitud de desestimación promovida por Sánchez.

En mérito de lo anterior, y como correctamente determinó el foro apelado, procedía desestimar la causa de acción instada en contra de la parte apelada. En consecuencia, confirmamos la determinación apelada.

**IV**

Por los fundamentos que anteceden, confirmamos la *Sentencia Parcial* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones